IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| John J. Garrett, ) | |
| ) | Civil Action No. 7:05-1542-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| B. Lee Thomas, Jimmy Dean Justice, ) | |
| Dena R. Justice, Francis O'Brien, ) | |
| UnumProvident Life & Accident ) | |
| Insurance Company, Jim Perry, ) | |
| Tina Fowler, Miriam Ruff, First ) | |
| Citizens, and Universal Underwriters, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the motion for summary judgment filed by defendants UnumProvident Insurance Co. and B. Lee Thomas, the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) filed by defendants Jimmy Dean Justice and Dena R. Justice, and the plaintiff's motion to dismiss Jim Perry, Tina Fowler, and Miriam Ruff as defendants.

*Pro se* plaintiff John J. Garrett initiated this action in the Spartanburg County Court of Common Pleas on February 28, 2005, seeking damages for negligence, negligent misrepresentation, fraud, conspiracy, intentional infliction of emotional distress, and breach of contract. Defendants UnumProvident and Thomas removed the case to this court on May 31, 2005, on the basis of federal question jurisdiction, arguing that the plaintiff's claims against them are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## **FACTS PRESENTED**[1]

The plaintiff's complaint arises from the termination of his disability benefits. The plaintiff filed a claim for disability benefits, which was granted, in the early 1980s (pl. dep. 153). The benefits were paid pursuant to a group long-term disability policy that names M. Lowenstein Corporation, which was apparently the plaintiff's employer, as the plan sponsor. The summary plan description ("SPD") of that policy states that a portion of the costs of the plan are paid by M. Lowenstein Corporation, and M. Lowenstein Corporation is also the named insured. The SPD also states that it is governed by ERISA (UnumProvident m.s.j., ex. A at 14). The policy was underwritten by Provident Life and Accident Insurance Company, a subsidiary of UnumProvident.

On October 8, 2001, defendant UnumProvident notified the plaintiff by letter that his disability benefits were being terminated because it had "received information that [he] no longer [met] the definition of total disability as outlined under the Group Policy . . . ." (UnumProvident m.s.j., ex. B). According to that letter, UnumProvident had received information that the plaintiff had been employed on a full-time basis during the period beyond the first two years of total disability. The letter also noted that five indictments had been returned against the plaintiff for making false statements or misrepresentations. Those indictments related to "claim statements presented by [the plaintiff] claiming to meet the definition of total disability" (UnumProvident m.s.j., ex. B). It appears that UnumProvident had been informed, allegedly by defendant Jimmy Dean Justice, that the plaintiff was working at

---

[1]The court has attempted to recreate the rather complicated factual scenario at issue in this case as, unfortunately, none of the parties included a comprehensive factual statement in their motions and responses.

Professional Collision and Towing, Inc. ("PCT"), of which the plaintiff is a shareholder, while receiving disability benefits. The plaintiff apparently pleaded guilty to insurance fraud.

The plaintiff claims that defendant B. Lee Thomas, an investigator for UnumProvident, failed to disclose to the grand jury information helpful to the plaintiff that he acquired in an interview with Erik van der Steur, the former president of PCT (comp. ¶¶ 35-54).

On January 3, 2002, the plaintiff's attorney in the matter wrote UnumProvident demanding that the plaintiff's disability benefits be reinstated. The attorney noted that the plaintiff suffered from multiple sclerosis, heart disease, and depression, and included a statement from the plaintiff's doctor supporting his claim that he continued to be disabled (UnumProvident m.s.j., ex. D). By letter dated February 21, 2002, UnumProvident notified the plaintiff that the appellate review of the decision to terminate his benefits had been overturned and his benefits were being reinstated. The letter further stated that the investigation into whether the plaintiff had been working while he was receiving disability benefits would continue (UnumProvident m.s.j., ex. C).

In addition to the claims against UnumProvident and Thomas, the plaintiff has alleged claims against First Citizens Bank and Trust Company and three of its employees, Jim Perry, Tina Fowler, and Miriam Ruff, for negligence, fraud, and breach of contract. Those claims stem from the bank's dissemination of certain bank documents to the South Carolina Attorney General's Office during the insurance fraud investigation. The plaintiff also claims defendant Universal Underwriters failed to provide him with copies of checks paid to PCT and that Universal may be responsible for his alleged losses under its insurance policy with PCT (comp. ¶¶ 66, 106).

## ANALYSIS

Defendants UnumProvident and Thomas argue that the plaintiff's causes of action against them are preempted by ERISA. This court agrees. ERISA applies to all employee

benefit plans established or maintained by an employer "engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. §1003(a). ERISA defines a benefit plan as:

> [A]ny plan, fund, or program which was heretofore or is hereinafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits . . . .

29 U.S.C. §1002(a).

In *Custer v. Pan American Life Insurance Company*, 12 F.3d 410 (4th Cir. 1993), the Fourth Circuit Court of Appeals set forth the test to determine if ERISA governs a plan. The court stated:

> [F]or ERISA to apply, there must be (1) a plan, fund or program, (2) established or maintained, (3) by an employer, employee organization, or both, (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries. *See Donovan*, 688 F.2d at 1371.

*Id.* at 417. The court also recognized that "in addition, the statute explicitly states that the establishment of a plan may be accomplished through the purchase of insurance. *See* 29 U.S.C. §1002(1)." 12 F.3d at 417. Even though contributing to premium payments is some evidence of an ERISA plan, it is not the only evidence that establishes an ERISA plan. *See Donovan v. Dellingham*, 688 F.2d 1367 (11th Cir. 1982).

> The existence of a plan *may be* determined from the surrounding circumstances to the extent that a "reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."

*Custer*, 12 F.3d at 417 (quoting *Donovan*, 688 F.2d 1367, 1373 (11th Cir. 1982)). In *Custer*, the court found that ERISA did govern the plan in question. The employer obtained the policy at the direction of its president for the benefit of its employees. The employer negotiated the terms

of the policy and paid for one-half of the costs. Finally, the employees received the benefits by reason of their employment with employer and were fully aware of the benefits. *Id.* at 417-18.

In addition to purchasing insurance, ERISA plans can be established where the employer endorses the plan to its employees. *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 977-78 (5th Cir. 1991) (ERISA plan established where employer's name and logo were used on cover of insurance booklet given to employees). The group long-term disability policy at issue in this case is clearly an ERISA plan. The summary plan description ("SPD") specifically states it is governed by ERISA. The SPD also names M. Lowenstein Corporation as the plan sponsor. Additionally, the SPD states that a portion of the costs of the plan are paid for by M. Lowenstein Corporation. M. Lowenstein Corporation is also the named insured of the group long-term disability policy. Finally, the SPD sent to employees states on the cover "Group Long Term Disability Insurance for eligible employees of M. Lowenstein Corporation and subsidiary Companies and Divisions." By paying for, creating, sponsoring, and endorsing the disability coverage to its employees, the plaintiff's employer established and/or maintained an ERISA plan.

ERISA contains a specific preemption clause which states: "Except as provided in subsection (b) of this section, the provisions of [ERISA] shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. §1144(a). The United States Supreme Court has recognized that the force of ERISA's preemption is strong and its scope wide. *See FMC Corporation v. Holliday*, 498 U.S. 52, 58-59 (1990). "The phrase 'relates to' is given a broad common sense meaning '[a] law relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97(1983). ERISA is the "exclusive vehicle for actions by ERISA plan participants and beneficiaries, asserting improper processing of a claim for benefits . . . ." *Pilot Life v. Dedeaux*, 481 U.S. 41, 52 (1987). "[A]fter *Pilot Life*, any contention that the state law claims here are not preempted by ERISA would be frivolous . . .

5

." *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 82 (4th Cir. 1989). Based upon the foregoing, this court finds that ERISA preempts all of the plaintiff's causes of action against these defendants. *See Pilot Life,* 481 U.S. at 57 (holding ERISA preempted claims under Mississippi's common law tort, and contract allegations alleging bad faith); *Custer*, 12 F.3d at 423 (holding ERISA preempted a cause of action under West Virginia's unfair trade practices statutes); and *Duncan v. Provident Mutual Life Insurance Company*, 427 S.E.2d 657, 659 (S.C. 1993) (holding ERISA preempted a claim under South Carolina's common law of bad faith).

The defendants next argue that even treating the plaintiff's claims as claims under ERISA, the claims fail as they are barred by the statute of limitations. The plaintiff's long-term disability benefits were temporarily suspended from October 8, 2001, until they were reinstated on February 21, 2002 (UnumProvident m.s.j., ex. B, C). The plaintiff had actual knowledge that his benefits were suspended in 2001, and he even hired an attorney to assist in reinstating the benefits (UnumProvident m.s.j., ex. D). ERISA does not provide a specific limitation period for bringing a private cause of action. Accordingly, federal courts look to state law for an analogous limitation provision. *Ladzinski v. MEBA Pension Trust*, 951 F. Supp. 570, 573-74 (D.Md. 1997). Because the issues raised in the complaint are analogous to a breach of contract, South Carolina's three-year statute of limitations applies. *See Id.*; *Dameron v. Sinai Hospital of Baltimore*, 815 F.2d 975, 981-82 (4th Cir. 1987); S.C. Code Ann. §15-3-530(1).

South Carolina adopted the "discovery rule" in determining when a cause of action accrues. Under the discovery rule, the statute does not begin to run from the date the negligent act or breach of contract occurred; rather, the statute runs from the date the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence. *Dillon County School District No. 2 v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 559-60 (S.C. Ct. App. 1985). The discovery rule is consistent with the rule applied by the Fourth Circuit Court of Appeals as to when a cause of action for benefits arises under ERISA. Usually, an ERISA cause of action for benefits does not accrue until a claim for benefits has been made

and formally denied. *Rodriquez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir. 1989). However, a cause of action under ERISA may arise prior to the formal denial of a claim, where some event other than the denial of a claim should have alerted the plaintiff to his entitlement to benefits he did not receive. *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir. 1990) (where plaintiff learned from a deposition of a union official in an unrelated matter that plaintiff was entitled to benefits); *Dameron*, 815 F.2d at 982 n.7 (statute began to run when defendant notified plaintiff of an intent to reduce benefits).

The plaintiff alleges that his benefits were cut off for a period of months between October 2001 and February 2002. The plaintiff was certainly aware in October 2001 that his benefits were being held up pending further investigation. Further, on or about October 25, 2001, Provident Accident Life and Accident Insurance Company provided the plaintiff's attorney with copies of requested documents concerning its claims decision. Included in those documents was defendant Thomas' report to the South Carolina Department of Insurance, which indicated that he had interviewed two individuals who worked at PTC during the period the plaintiff was allegedly employed (pl. dep. 159-60, ex. 14G). Despite knowledge that his benefits were terminated during that time period and that defendant Thomas had disclosed only two of the three interviews he conducted, the plaintiff did not file suit until February 28, 2005. Because the plaintiff knew or should have known of his cause of action for disability benefits in October 2001, but he did not file and serve his complaint on these defendants until over three years later, the plaintiff's complaint is barred by the statute of limitations. Furthermore, even if the plaintiff's causes of action were not preempted by ERISA, the state law claims are barred by the applicable statutes of limitations. S.C. Code Ann. §15-3-530 (1) & (5).

As discussed above, the plaintiff has alleged numerous state law claims against the remaining defendants to this action. The court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the

plaintiff's federal claims. *See* 28 U.S.C. §1367(c). Accordingly, the case should be remanded to state court.

The plaintiff filed a motion to dismiss defendants Jim Perry, Tina Fowler, and Miriam Ruff on August 31, 2005. As no opposition to that motion has been filed, it is the recommendation of this court that those defendants be dismissed. The plaintiff has also moved to amend his complaint and add several defendants, and the remaining defendants have moved for dismissal. Those motions should be held in abeyance pending the district judge's disposition of the instant motion for summary judgment. Should the district judge adopt this court's recommendation, the motions will be rendered moot.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the motion for summary judgment of defendants UnumProvident and B. Lee Thomas, and the plaintiff's motion to dismiss defendants Jim Perry, Tina Fowler, and Miriam Ruff both be granted. Further, it is recommended that the dispositive motions of the remaining defendants and all pending nondispositive motions be held in abeyance pending the district judge's disposition of the instant motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

January 18, 2006

Greenville, South Carolina